1  M. ANDREW WOODMANSEE (CA SBN 201780)
   MAWoodmansee@mofo.com
2  W. CHRISTOPHER DALTON (CA SBN 267697)
   CDalton@mofo.com
3  MORRISON & FOERSTER LLP
   12531 High Bluff Drive, Suite 100
4  San Diego, California  92130-2040
   Telephone: 858.720.5100
5  Facsimile: 858.720.5125

6  Attorneys for Plaintiff MICHAEL J. BOOTH

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 MICHAEL J. BOOTH, CDCR #G-27872,          Case No. 10 CV 1236 WQH (NLS)

12              Plaintiff,                    **PLAINTIFF MICHAEL J.
                                             BOOTH'S SECOND AMENDED
13      v.                                    COMPLAINT**

14 GEORGE NEOTTI, Warden; R. BOLDING,
   Correctional Officer; T. ARMSTEAD,
15 Correctional Officer; E. GARCIA, Correctional
   Sergeant; A. PITTMAN, Correctional Lieutenant;
16 Capt. T. KABBAN-MILLER, Correctional
   Captain; A.L. COTA, Associate Warden; R.
17 COBB, Correctional Counselor II; W. RAUPE
   Correctional Counselor II,
18
19              Defendants.

20
       Plaintiff Michael J. Booth (hereinafter "Plaintiff") alleges as follows:
21
22                        **I. INTRODUCTION**

23      1.      This is a civil rights complaint for declaratory relief, compensatory damages, and

   punitive damages brought based on negligence and the violation of the legal rights of plaintiff
24
   Michael J. Booth while he was incarcerated at the Richard J. Donovan ("R.J.D.") prison by
25
   defendants George Neotti, who was the warden of R.J.D. at the time of the incidents giving rise to
26
   this litigation; A.L. Cota, Correctional Captain T. Kabban-Miller; Correctional Lieutenant A.
27
   Pittman, Correctional Sergeant E. Garcia, Correctional Counselor II R. Cobb, Correctional
28

Counselor II W. Raupe, Correctional Officer R. Bolding, and Correctional Officer T. Armstead (collectively "Defendants").

## II. JURISDICTION AND VENUE

2.      This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges, and immunities guaranteed by the Eighth Amendment of the United States Constitution.  This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

3.      This is a negligence action under California Government Code § 844.6(d).  This Court has jurisdiction pursuant to 28 U.S.C. § 1367, as this claim shares a common nucleus of operative fact with the claim over which this Court has original jurisdiction.

4.      This is an action for negligent infliction of emotional distress under California common law.  This Court has jurisdiction pursuant to 28 U.S.C. § 1367, as this claim shares a common nucleus of operative fact with the claim over which this Court has original jurisdiction.

5.      This Court has jurisdiction over plaintiff's action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

6.      The United States District Court for the Southern District of California is an appropriate venue under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claim occurred at the Richard J. Donovan prison, located in the Southern District of California.

## III. PARTIES

7.      Plaintiff Michael J. Booth is and was at all times mentioned herein a prisoner of the State of California in the custody of the California Department of Corrections and Rehabilitation ("C.D.C.R.").  He is currently confined in the California Rehabilitation Center in Norco, California.

8.      Defendant George Neotti is and was at all times mentioned herein the Warden of R.J.D. prison and is sued herein in his individual and official capacities.  Defendant Neotti was responsible for supervising, disciplining, and providing necessary training for all correctional

officers and staff employed at R.J.D. prison.  He is legally responsible for the operation of R.J.D. prison and for the welfare of all inmates therein.

9.      Defendant A.L. Cota was at all times mentioned herein the Associate Warden of R.J.D. prison and is sued herein in his individual and official capacities.  Defendant Cota was responsible for supervising and providing necessary training to the correctional officers and staff under his authority, and for the implementation of C.D.C.R. policies within the facilities and housing units over which he had authority.

10.     Defendant T. Kabban-Miller was at all times mentioned herein the R.J.D. Facility Two Correctional Captain and is sued herein in her individual and official capacities.  She was responsible for the functional operation of the R.J.D. Administrative Segregation Unit ("Ad/Seg") and compliance with all C.D.C.R. and R.J.D. policies and procedures.

11.     Defendant A. Pittman was at all times mentioned herein the Ad/Seg correctional lieutenant on duty in Ad/Seg Unit #6 during the third watch on June 15, 2009 and is sued herein in his individual and official capacities.  He was responsible for the operational oversight of Ad/Seg Unit #6 and compliance with C.D.C.R. and R.J.D. operational procedures within Ad/Seg Unit #6.

12.     Defendant E. Garcia was at all times mentioned herein the Ad/Seg correctional sergeant on duty in Ad/Seg Unit #6 during the third watch on June 15, 2009 and is sued herein in his individual and official capacities.  He was responsible for knowing and implementing all C.D.C.R. and R.J.D. policies and procedures relating to the Ad/Seg Unit to which he was assigned.

13.     Defendant R. Cobb was at all times mentioned herein a Correctional Counselor II at R.J.D. prison at all times relevant to this lawsuit and are sued herein in his individual and official capacities.  He was responsible for ensuring that documents relating to inmate Samuel Shoemake's June 15, 2009 in-cell battery of his cellmate was recorded in Shoemake's prison files in a timely manner.  He was responsible for ensuring that Shoemake attend the June 24, 2009 Institutional Classification Committee ("ICC") hearing, and that appropriate documentation

1   relating to Shoemake's June 15, 2009 in-cell battery of his cellmate was available for the ICC's

2   review.

3        14.    Defendant W. Raupe was at all times mentioned herein a Correctional Counselor II

4   at R.J.D. prison at all times relevant to this lawsuit and are sued herein in his individual and

5   official capacities.  He was responsible for ensuring that documents relating to inmate Samuel

6   Shoemake's June 15, 2009 in-cell battery of his cellmate was recorded in Shoemake's prison files

7   in a timely manner.  He was responsible for ensuring that Shoemake attend the June 24, 2009

8   Institutional Classification Committee ("ICC") hearing, and that appropriate documentation

9   relating to Shoemake's June 15, 2009 in-cell battery of his cellmate was available for the ICC's

10   review.

11        15.    Defendant T. Armstead was a correctional officer at R.J.D. prison at all times

12   relevant to this lawsuit and is sued in his individual and official capacities.

13        16.    Defendant R. Bolding was a correctional officer at R.J.D. prison at all times

14   relevant to this lawsuit and is sued in his individual and official capacities.

15   **IV. FACTUAL ALLEGATIONS**

16        17.    On March 12, 1992, Samuel Lee Shoemake (hereinafter "Shoemake") was

17   sentenced by the Superior Court of Kern County to a term of seventy-two (72) years in state

18   prison for forced oral copulation, forced sodomy, and forced rape.  This sentence was enhanced

19   under Cal. Penal Code § 12022.85 for committing each offense with knowledge that he had

20   acquired immune deficiency syndrome (AIDS) or that he carried antibodies of the human

21   immunodeficiency virus (HIV). *People v. Shoemake*, 20 Cal. Rptr. 3d 36, 44 (Cal. Ct. App.

22   1993).

23        18.    Upon information and belief, Shoemake was placed in the administrative

24   segregation ("Ad/Seg") unit of R.J.D. prison on December 13, 2008 as a result of his assault on

25   an inmate, which resulted in Shoemake being charged with Battery on an Inmate.  Shoemake was

26   recommended for transfer to a different institution due to the danger he posed to his fellow

27   inmates.

28

sd-578136

19.     Upon information and belief, Shoemake assaulted a second prisoner on June 15, 2009.  This second prisoner was Shoemake's cellmate at the time that Shoemake assaulted him.  This assault resulted in Shoemake being charged with Battery on an Inmate with Injury Requiring the Use of Force.

20.     The C.D.C.R.'s Department Operations Manual ("DOM"), section 54046.5.1 states that verification that an Ad/Seg inmate has been assaultive towards a cell partner or demonstrates any significant in-cell violence against a cell partner "shall require the inmate be single celled pending administrative review and subsequent [Institutional Classification Committee] review and approval."

21.     Under DOM section 54046.5.1, Shoemake's June 15, 2009 assault of his cellmate required Ad/Seg correctional staff to place Shoemake on single-cell status pending administrative review and ICC review.

22.     Following the June 15, 2009 assault on his cellmate, Ad/Seg staff failed to convert Shoemake to single-cell status, in violation of DOM section 54046.5.1.

23.     On June 21, 2009, Plaintiff Michael J. Booth was placed in the Ad/Seg unit for his own safety, because he had received threats of violence from another inmate.

24.     On June 22, 2009, an Ad/Seg correctional officer asked Plaintiff if he would be Shoemake's cellmate.  Plaintiff asked if he could refuse.  The officer answered that Plaintiff would be subject to disciplinary action for refusing a cellmate.  Plaintiff, unaware of Shoemake's December 13, 2008 and June 15, 2009 assaults against other inmates, agreed to share a cell with Shoemake.

25.     On June 22, 2009, Plaintiff was moved into cell 128 with Shoemake.

26.     Under C.D.C.R. and R.J.D. policy, R.J.D. correctional staff were required to ensure that Shoemake's classification status was reviewed by the ICC at the next available ICC hearing following his June 15, 2009 battery against his cellmate.  On June 24, 2009, an ICC hearing was held.

27.     Plaintiff attended the June 24, 2009 ICC hearing, because he had recently been placed into R.J.D.'s Ad/Seg unit.  Plaintiff's classification status was reviewed by the ICC.  The

ICC stated: "[I]n reviewing [Plaintiff's]…safety concerns over the past several months, coupled with the problems [Plaintiff's] homosexuality and feminine appearance could bring in the gym, ICC erred on the side of caution and retained [Plaintiff] in [Ad/Seg]."  Plaintiff was approved for double cell status.

28.   R.J.D. staff failed to ensure that Shoemake attend the June 24, 2009 ICC hearing, in violation of C.D.C.R. and R.J.D. policy.  Shoemake's classification status was not reviewed by the ICC hearing held on June 24, 2009.  The ICC therefore did not convert Shoemake to single-cell status.

29.   On the nights of June 25, 26, 27, and 28, Plaintiff was forcibly and violently raped by Shoemake while being threatened with a knife-like object.

30.   On June 26, 2009, at approximately 1:00 p.m., Plaintiff informed the correctional officer Defendant Armstead that Plaintiff was "having real problems" in his cell and requested to be taken out of cell 128.  Defendant Armstead took no action, leaving Plaintiff alone in his cell with Shoemake.

31.   On June 26, 2009, at approximately 2:00 p.m., Plaintiff informed the correctional officer Defendant Bolding that he was "having real problems" in his cell and requested to be taken out of cell 128.

32.   Defendant Bolding informed Plaintiff that Plaintiff would have to find a new cellmate in order to be moved.  Plaintiff named three different inmates with whom he would share a cell.

33.   Defendant Bolding informed Plaintiff that one of the inmates suggested by Plaintiff was not a possibility, because he was being moved to a different facility.  Defendant Bolding informed Plaintiff that the other two inmates were not possibilities because they were on Ad/Seg status for battery against fellow prisoners (the same reason Shoemake was on Ad/Seg status).  In accordance with C.D.C.R. policy, neither could therefore have a cellmate (just as Shoemake was on single-cell status and was not supposed to have a cellmate) due to possible violence.  Defendant Bolding took no action, leaving Plaintiff alone in his cell with Shoemake.

34.     Shoemake was placed on single-cell status on June 29, 2009 following Plaintiff's allegations that Shoemake had raped Plaintiff on the nights of June 25, 26, 27, and 28.

35.     Shoemake's classification status was reviewed at ICC hearings on July 15, 2009 and August 26, 2009.  At both hearings, the ICC retained Shoemake on single-cell status because the "in-cell assault review" relating to Shoemake's June 15, 2009 assault against his cellmate had not been completed.  The documents recording the ICC's July 15 and August 26 reviews of Shoemake's classification status fail to mention his alleged sexual assaults of Plaintiff.

36.     C.D.C.R. policy requires that an "in-cell assault review" be completed within two weeks of an incident giving rise to such a review.

37.     By the August 26, 2009 ICC hearing, over ten weeks after Shoemake's June 15, 2009 in-cell assault against his cellmate, R.J.D. correctional staff had failed to complete the in-cell assault review relating to the incident.

38.     R.J.D. staff failed to complete the in-cell assault review of Shoemake's June 2009 sexual assaults against Plaintiff until October 15, 2009, over fifteen weeks after the incidents.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

39.     Plaintiff exhausted his administrative remedies within the prison grievance system. Plaintiff filed a C.D.C.R. Form 602 administrative appeal on June 30, 2009.  Plaintiff exhausted his remedies at the informal level and all three formal levels of review.  He received the final denial of relief from the Director's Level of Review on April 12, 2010.  Plaintiff's appeal log number is R.J.D.-2-09-00995 and is attached to this Second Amended Complaint as Exhibit A.

40.     Plaintiff filed a timely claim with the Victim Compensation and Government Claims Board ("VCGCB").  VCGCB received Plaintiff's claim on September 11, 2009. Plaintiff's claim was rejected by VCGCB on December 17, 2009.  Plaintiff's claim number is G585483 and is attached to this Second Amended Complaint as Exhibit B.

sd-578136

# VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983, Eighth Amendment to the U.S. Constitution)
### *(Booth v. Armstead, Bolding)*

41.     The allegations contained in paragraphs 1 through 40, inclusive, are hereby incorporated by reference.

42.     An actual controversy exists between Plaintiff and Defendants Armstead and Bolding concerning their rights, privileges, and obligations.

43.     Defendants Armstead's and Bolding's wrongful actions alleged herein are in violation of 42 U.S.C. § 1983 because they have deprived Plaintiff of rights, privileges, and immunities secured by the U.S. Constitution.

44.     Defendants Armstead and Bolding violated Plaintiffs' rights, privileges, and immunities, by (1) forcing Plaintiff, an openly gay man, to remain in a cell with an inmate known to commit acts of violence against openly gay inmates, who was in Ad/Seg for battering an inmate and had committed battery on another inmate only days earlier, even after Plaintiff informed them that he was "having real problems" and needed to get out of his cell, and (2) demonstrating deliberate indifference to Plaintiff's safety, thereby violating Plaintiff's right to be free from cruel and unusual punishment guaranteed to Plaintiff by the Eighth Amendment to the United States Constitution.

45.     Defendants Armstead and Bolding's acts or omissions demonstrate deliberate indifference to Plaintiff's Eighth Amendment rights.

46.     Defendants Armstead and Bolding, and each of them, knew or should have known that their acts or omissions created an unreasonable risk of serious harm to Plaintiff and resulted in a deprivation of reasonable safety.

47.     As a proximate and foreseeable result of Defendants Armstead and Bolding's violation of Plaintiff's right to be free of cruel and unusual punishment while he was at R.J.D. prison, Plaintiff has suffered, and will continue to suffer, irreparable harm.

48.     As a proximate and foreseeable result of Defendants Armstead and Bolding's violations of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, Plaintiff has suffered, is suffering, and will continue to suffer injuries resulting from rape.

49.     As a proximate and foreseeable result of Defendants Armstead and Bolding's violations of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, Plaintiff has suffered, is suffering, and will continue to suffer injuries in the form of pain and suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental distress, and related psychological injuries.

50.     In all actions and omissions alleged herein, Defendants Armstead and Bolding, and each of them, acted under the color of California state law.

51.     Defendants Armstead and Bolding, and each of them, are therefore liable to Plaintiff for compensatory and punitive damages in an amount to be proven at trial.


### SECOND CAUSE OF ACTION
**(Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))**
***(Booth v. Neotti)***

52.     The allegations contained in paragraphs 1 through 51, inclusive, are hereby incorporated by reference.

53.     At all times relevant, Plaintiff was in the custody of Defendant Neotti, because Defendant Neotti was the Warden of R.J.D. prison, where Plaintiff was incarcerated.  Defendant Neotti's custody of Plaintiff created a situation of dependency, which resulted in detrimental reliance on him for protection.  This, in turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

54.     Upon information and belief, Defendant Neotti was responsible for ensuring that all custodial staff in R.J.D. prison's Ad/Seg Unit were properly trained and that all Ad/Seg policies were properly implemented.  Defendant Neotti had the ability and authority to take action

1   to ensure that all of the custodial staff in Richard J. Donovan's Ad/Seg Unit were properly trained

2   in Ad/Seg policies, and that all Ad/Seg policies were properly implemented.

3       55.     Upon information and belief, Defendant Neotti had the ability and authority to take

4   action to protect vulnerable inmates such as Plaintiff from the obvious risk that they would be

5   assaulted by inmates with a history of assault against their cell partners.

6       56.     Defendant Neotti breached the aforementioned duty, and acted with negligence,

7   when he failed to ensure that all custodial staff in R.J.D. prison's Ad/Seg facilities were properly

8   trained and that C.D.C.R's Ad/Seg policies were properly implemented.

9       57.     Defendant Neotti breached the aforementioned duty, and acted with negligence,

10  when, by failing to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that

11  C.D.C.R. Ad/Seg policies were properly implemented, he allowed Shoemake, an inmate who had

12  assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to

13  be housed with Plaintiff, in violation of C.D.C.R. policy.

14      58.     By allowing Shoemake, who had a history of assaultive behavior and had assaulted

15  his cellmate only days earlier, to be housed with Plaintiff, a vulnerable and openly gay inmate

16  who was placed into R.J.D. prison's Ad/Seg Unit for his own safety, without any protection from

17  the obvious and foreseeable risk that Plaintiff would be assaulted, Defendant Neotti knew or

18  should have known that Plaintiff would be assaulted.

19      59.     As a proximate and foreseeable result of Defendant Neotti's failure to ensure that

20  R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R.'s policies were properly

21  implemented, Plaintiff was inappropriately housed with Shoemake, and was violently raped on

22  four consecutive nights.

23      60.     Defendant Neotti is therefore liable to Plaintiff for damages in an amount to be

24  proven at trial.

25

26

27

28

sd-578136

**THIRD CAUSE OF ACTION**
(Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))
*(Booth v. Cota)*

61.     The allegations contained in paragraphs 1 through 60, inclusive, are hereby incorporated by reference.

62.     At all times relevant, Plaintiff was in the custody of Defendant Cota, because Defendant Cota was the Associate Warden of R.J.D. prison, where Plaintiff was incarcerated. Defendant Cota's custody of Plaintiff created a situation of dependency, which resulted in detrimental reliance on him for protection.  This, in turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

63.     Upon information and belief, Defendant Cota was responsible for ensuring that all custodial staff in R.J.D. prison's Ad/Seg Unit were properly trained and that all Ad/Seg policies were properly implemented.  Defendant Cota had the ability and authority to take action to ensure that all of the custodial staff in Richard J. Donovan's Ad/Seg Unit were properly trained in Ad/Seg policies, and that all Ad/Seg policies were properly implemented.

64.     Upon information and belief, Defendant Cota had the ability and authority to take action to protect vulnerable inmates such as Plaintiff from the obvious risk that they would be assaulted by inmates with a history of assault against their cell partners.

65.     Defendant Cota breached the aforementioned duty, and acted with negligence, when he failed to ensure that all custodial staff in R.J.D. prison's Ad/Seg facilities were properly trained and that C.D.C.R's Ad/Seg policies were properly implemented.

66.     Defendant Cota breached the aforementioned duty, and acted with negligence, when, by failing to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R. Ad/Seg policies were properly implemented, he allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

sd-578136

67.     By allowing Shoemake, who had a history of assaultive behavior and had assaulted his cellmate only days earlier, to be housed with Plaintiff, a vulnerable and openly gay inmate who was placed into R.J.D. prison's Ad/Seg Unit for his own safety, without any protection from the obvious and foreseeable risk that Plaintiff would be assaulted, Defendant Cota knew or should have known that Plaintiff would be assaulted.

68.     As a proximate and foreseeable result of Defendant Cota's failure to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R. policies were properly implemented, Plaintiff was inappropriately housed with Shoemake and was violently raped on four consecutive nights.

69.     Defendant Cota is therefore liable to Plaintiff for damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
(Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))
*(Booth v. Kabban-Miller)*

70.     The allegations contained in paragraphs 1 through 69, inclusive, are hereby incorporated by reference.

71.     At all times relevant, Plaintiff was in the custody of Defendant Kabban-Miller, because Defendant Kabban-Miller was the Facility Two Correctional Captain at R.J.D., where Plaintiff was incarcerated.  Defendant Kabban-Miller's custody of Plaintiff created a situation of dependency, which resulted in detrimental reliance on him for protection.  This, in turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

72.     Upon information and belief, Defendant Kabban-Miller was responsible for ensuring that all custodial staff in R.J.D. prison's Ad/Seg Unit were properly trained and that all Ad/Seg policies were properly implemented.  Defendant Kabban-Miller had the ability and authority to take action to ensure that all of the custodial staff in Richard J. Donovan's Ad/Seg Unit were properly trained in Ad/Seg policies, and that all Ad/Seg policies were properly implemented.

sd-578136

73.     Upon information and belief, Defendant Kabban-Miller had the ability and authority to take action to protect vulnerable inmates such as Plaintiff from the obvious risk that they would be assaulted by inmates with a history of assault against their cell partners.

74.     Defendant Kabban-Miller breached the aforementioned duty, and acted with negligence, when she failed to ensure that all custodial staff in R.J.D. prison's Ad/Seg facilities were properly trained and that C.D.C.R's Ad/Seg policies were properly implemented.

75.     Defendant Kabban-Miller breached the aforementioned duty, and acted with negligence, when, by failing to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R. Ad/Seg policies were properly implemented, she allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

76.     By allowing Shoemake, who had a history of assaultive behavior and had assaulted his cellmate only days earlier, to be housed with Plaintiff, a vulnerable and openly gay inmate who was placed into R.J.D. prison's Ad/Seg Unit for his own safety, without any protection from the obvious and foreseeable risk that Plaintiff would be assaulted, Defendant Kabban-Miller knew or should have known that Plaintiff would be assaulted.

77.     As a proximate and foreseeable result of Defendant Kabban-Miller's failure to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R. policies were properly implemented, Plaintiff was inappropriately housed with Shoemake and was violently raped on four consecutive nights.

78.     Defendant Kabban-Miller is therefore liable to Plaintiff for damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**(Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))**
***(Booth v. Pittman)***

79.     The allegations contained in paragraphs 1 through 78, inclusive, are hereby incorporated by reference.

80.     At all times relevant, Plaintiff was in the custody of Defendant Pittman, because Defendant Pittman was a correctional lieutenant at R.J.D., where Plaintiff was incarcerated. Defendant Pittman's custody of Plaintiff created a situation of dependency, which resulted in detrimental reliance on him for protection.  This, in turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

81.     Upon information and belief, Defendant Pittman was responsible for the operational oversight of Ad/Seg Unit #6 on June 15, 2009, including ensuring that all Ad/Seg policies were properly implemented.  Defendant Pittman had the ability and authority to take action to ensure that all C.D.C.R. Ad/Seg Unit policies were properly implemented in Ad/Seg Unit #6 on June 15, 2009.

82.     Upon information and belief, Defendant Pittman had the ability and authority to take action to protect vulnerable inmates such as Plaintiff from the obvious risk that they would be assaulted by inmates with a history of assault against their cell partners.

83.     Defendant Pittman breached the aforementioned duty, and acted with negligence, when he failed to ensure that all C.D.C.R Ad/Seg policies were properly implemented in Ad/Seg Unit #6.

84.     Defendant Pittman breached the aforementioned duty, and acted with negligence, when, by failing to ensure that C.D.C.R. Ad/Seg policies were properly implemented, he allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

85.     By failing to ensure that Shoemake was placed on single-cell status following his June 15, 2009 assault of his cellmate, Defendant Pittman allowed Shoemake to be housed with Plaintiff, a vulnerable and openly gay inmate who was placed into Ad/Seg for his own safety, without any protection from the obvious and foreseeable risk that Plaintiff would be assaulted. By failing to ensure that Shoemake was placed immediately on single-cell status following his June 15, 2009 assault of his cellmate, Defendant Pittman knew or should have known that any inmate housed with Shoemake would be assaulted.

86.     As a proximate and foreseeable result of Defendant Pittman's failure to ensure that C.D.C.R. Ad/Seg policies were properly implemented, Plaintiff was inappropriately housed with Shoemake and was violently raped on four consecutive nights.

87.     Defendant Pittman is therefore liable to Plaintiff for damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
**(Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))**
*(Booth v. Garcia)*

88.     The allegations contained in paragraphs 1 through 87, inclusive, are hereby incorporated by reference.

89.     At all times relevant, Plaintiff was in the custody of Defendant Garcia, because Defendant Garcia was a correctional sergeant at R.J.D., where Plaintiff was incarcerated. Defendant Garcia's custody of Plaintiff created a situation of dependency, which resulted in detrimental reliance on him for protection.  This, in turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

90.     Upon information and belief, Defendant Garcia was responsible for the operational oversight of Ad/Seg Unit #6 on June 15, 2009, including ensuring that all Ad/Seg policies were properly implemented.  Defendant Garcia had the ability and authority to take action to ensure that all C.D.C.R. Ad/Seg Unit policies were properly implemented in Ad/Seg Unit #6 on June 15, 2009.

91.     Upon information and belief, Defendant Garcia had the ability and authority to take action to protect vulnerable inmates such as Plaintiff from the obvious risk that they would be assaulted by inmates with a history of assault against their cell partners.

92.     Defendant Garcia breached the aforementioned duty, and acted with negligence, when he failed to ensure that all C.D.C.R Ad/Seg policies were properly implemented in Ad/Seg Unit #6.

93.     Defendant Garcia breached the aforementioned duty, and acted with negligence, when, by failing to ensure that C.D.C.R. Ad/Seg policies were properly implemented, he allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

94.     By failing to ensure that Shoemake was placed on single-cell status following his June 15, 2009 assault of his cellmate, Defendant Garcia allowed Shoemake to be housed with Plaintiff, a vulnerable and openly gay inmate who was placed into Ad/Seg for his own safety, without any protection from the obvious and foreseeable risk that Plaintiff would be assaulted. By failing to ensure that Shoemake was placed immediately on single-cell status following his June 15, 2009 assault of his cellmate, Defendant Garcia knew or should have known that any inmate housed with Shoemake would be assaulted.

95.     As a proximate and foreseeable result of Defendant Garcia's failure to ensure that C.D.C.R. Ad/Seg policies were properly implemented, Plaintiff was inappropriately housed with Shoemake and was violently raped on four consecutive nights.

96.     Defendant Garcia is therefore liable to Plaintiff for damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))
### *(Booth v. Cobb, Raupe)*

97.     The allegations contained in paragraphs 1 through 96, inclusive, are hereby incorporated by reference.

98.     At all times relevant, Plaintiff was in the custody of Defendants Cobb and Raupe, because Defendants Cobb and Raupe were Correctional Counselor IIs ("CC-IIs") at R.J.D., where Plaintiff was incarcerated.  Defendants Cobb and Raupe's custody of Plaintiff created a situation of dependency, which resulted in detrimental reliance on them for protection.  This, in turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

99.     Upon information and belief, Defendants Cobb and Raupe were responsible for the proper processing all appropriate paperwork relating to Shoemake's June 15, 2009 in-cell battery of his cellmate, in accordance with C.D.C.R. policy.  Defendants Cobb and Raupe had the ability and authority to take action to ensure that these C.D.C.R. Ad/Seg Unit policies were properly implemented following the June 15, 2009 in-cell battery.

100.     Upon information and belief, Defendants Cobb and Raupe were responsible for ensuring that following Shoemake's June 15, 2009 in-cell battery of his cellmate, Shoemake was taken to the next available ICC hearing, in accordance with C.D.C.R. policy.  The next ICC hearing was held on June 24, 2009.  Defendants Cobb and Raupe had the ability and authority to take action to ensure that C.D.C.R. policy was followed and that Shoemake attend the June 24, 2009 ICC hearing.

101.     Defendants Cobb and Raupe breached the aforementioned duty, violated C.D.C.R. policy, and acted with negligence, when they failed to ensure that the appropriate documentation relating to Shoemake's June 15, 2009 in-cell battery of his cellmate was properly recorded and filed in a way that correctional staff could review it when making housing decisions within the Ad/Seg facility in which Shoemake was housed.

102.     Defendants Cobb and Raupe breached the aforementioned duty, violated C.D.C.R. policy, and acted with negligence, when they failed to ensure that Shoemake attend the June 24, 2009 ICC hearing, and that the June 24, 2009 ICC have records and documents relating to Shoemake's June 15, 2009 in-cell battery available for their review.

103.     Defendants Cobb and Raupe breached the aforementioned duty, violated C.D.C.R. policy, and acted with negligence, when, by failing to ensure that documentation of Shoemake's June 15, 2009 in-cell battery was recorded and that Shoemake attend the June 24, 2009 ICC, they allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

104.     By failing to implement the aforementioned policies, Defendants Cobb and Raupe allowed Shoemake to be housed with Plaintiff, a vulnerable and openly gay inmate who was placed into Ad/Seg for his own safety, without any protection from the obvious and foreseeable

1   risk that Plaintiff would be assaulted.  By failing to implement the aforementioned policies

2   following Shoemake's June 15, 2009 assault of his cellmate, Defendants Cobb and Raupe knew

3   or should have known that any inmate housed with Shoemake would be assaulted.

4        105.    As a proximate and foreseeable result of Defendants Cobb and Raupe's failure to

5   implement C.D.C.R. Ad/Seg policies, Plaintiff was inappropriately housed with Shoemake and

6   was violently raped on four consecutive nights.

7        106.    Defendants Cobb and Raupe are therefore liable to Plaintiff for damages in an

8   amount to be proven at trial.

9
10

**EIGHTH CAUSE OF ACTION**
**(Negligence, Negligence per se, CAL. GOV'T CODE §§ 820.8; 844.6(d))**
***(Booth v. Armstead and Bolding)***

11        107.    The allegations contained in paragraphs 1 through 106, inclusive, are hereby

12   incorporated by reference

13        108.    At all times relevant, Plaintiff was in the custody of Defendants Armstead and

14   Bolding, and each of them, because they served as correctional officers at R.J.D. prison, where

15   Plaintiff was incarcerated.  Defendants Armstead and Bolding's custody of Plaintiff created a

16   situation of dependency, which resulted in detrimental reliance on them for protection.  This, in

17   turn, established a duty of care to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d

18   18 (1983) and other applicable law discussing the doctrine of "special relationship."

19        109.    Upon information and belief, Defendants Armstead and Bolding, and each of

20   them, had the ability and authority to take action to protect Plaintiff from the obvious and

21   foreseeable risk that he would be assaulted by Shoemake, after Plaintiff informed them that he

22   was having "real problems and needed to get out of his cell."

23        110.    Defendants Armstead and Bolding, and each of them, breached the

24   aforementioned duty, and acted with negligence, when they forced Plaintiff, a vulnerable and

25   openly gay inmate, to remain in a cell, without protection from the obvious and foreseeable risk

26   of assault and after he informed them that he was having problems, with an inmate who was

27
28

Case No. 10 CV 1236 WQH (NLS)
SECOND AMENDED COMPLAINT

sd-578136

incarcerated for violent sex crimes, who had previously assaulted his cellmate only days earlier, and who was in Ad/Seg for committing another battery against an inmate.

111.    By forcing Plaintiff to remain in a cell with an inmate with a history of assault against inmates including his own cellmates, who was incarcerated for sex crimes such as forced sodomy and forced oral copulation, and without any protection from the obvious and foreseeable risk that he would be assaulted and after he informed them that he was having problems, Defendants Armstead and Bolding, and each of them, knew or should have known that Plaintiff would be assaulted.

112.    As a proximate and foreseeable result of Defendants Armstead and Bolding's act of forcing Plaintiff to remain in a cell with an inmate with a history of assault against other inmates including his own cellmates, who was incarcerated for sex crimes such as forced sodomy and forced oral copulation, and without any protection from the obvious and foreseeable risk of assault after he informed them that he was having problems, Plaintiff was violently raped on three consecutive nights.

113.    Defendants Armstead and Bolding, and each of them, are therefore liable to Plaintiff for damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### *(Booth v. Defendants Neotti, Cota, Kabban-Miller, Pittman, Garcia, Cobb, Raupe, Armstead and Bolding)*

114.    The allegations contained in paragraphs 1 through 113, inclusive, are hereby incorporated by reference.

115.    At all times relevant, Plaintiff was in the custody of Defendants, because Plaintiff was incarcerated at R.J.D. prison, where they served on the correctional staff.  Defendants' custody of Plaintiff created a situation of dependency on them, which resulted in detrimental reliance on Defendants Doe #1 and Doe #2 for protection.  This, in turn, established a duty of care for Defendants to protect Plaintiff under *Williams v. State of California*, 34 Cal.3d 18 (1983) and other applicable law discussing the doctrine of "special relationship."

116.    Defendants Neotti and Cota acted with negligence when they failed to ensure that all custodial staff in R.J.D. prison's Ad/Seg facilities were properly trained and that C.D.C.R's Ad/Seg policies were properly implemented.  By failing to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R. Ad/Seg policies were properly implemented, they allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

117.    Defendants Kabban-Miller, Pittman, and Garcia acted with negligence when they failed to ensure that all custodial staff in R.J.D. prison's Ad/Seg facilities were properly trained and that C.D.C.R's Ad/Seg policies were properly implemented.  By failing to ensure that R.J.D. prison's Ad/Seg staff were properly trained and that C.D.C.R. Ad/Seg policies were properly implemented, they allowed Shoemake, an inmate who had assaulted his cellmate in the R.J.D. prison's Ad/Seg Unit, to remain on double-cell status and to be housed with Plaintiff, in violation of C.D.C.R. policy.

118.    Defendants Cobb and Raupe acted with negligence when they failed to ensure that the appropriate documentation relating to Shoemake's June 15, 2009 in-cell battery of his cellmate was properly recorded and filed in a way that correctional staff could review it.  They acted with further negligence when they failed to ensure that Shoemake attend the June 24, 2009 ICC hearing, and that the June 24, 2009 ICC had records and documents relating to Shoemake's June 15, 2009 in-cell battery available for their review. By failing to implement the aforementioned policies, Defendants Cobb and Raupe allowed Shoemake to be inappropriately housed with Plaintiff, in violation of C.D.C.R. policy, which led to Plaintiff being violently raped on four consecutive nights.

119.    Defendants Armstead and Bolding acted with negligence when they forced Plaintiff, a vulnerable and openly gay inmate, to remain in a cell, without protection from the obvious and foreseeable risk of assault and after he informed them that he was having problems, with an inmate who was incarcerated for violent sex crimes, who had previously assaulted his cellmate only days earlier, and who was in Ad/Seg for committing another battery against an inmate.

120.     As a proximate and foreseeable result of Defendants' negligent conduct, Plaintiff was violently raped on four consecutive nights.

121.     As a proximate and foreseeable result of Defendants' negligent conduct, Plaintiff has suffered, is suffering, and will continue to suffer serious emotional distress in the form of pain and suffering, shame, humiliation, degradation, embarrassment, and related psychological injuries.  Defendants' negligent conduct was therefore a substantial factor in causing Plaintiff's serious emotional distress.

122.     Defendants are therefore liable to Plaintiff for damages in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
### (Punitive damages, CAL. CIV. CODE § 3294)
### *(Booth v. Armstead, Bolding)*

123.     The allegations contained in paragraphs 1 through 122, inclusive, are hereby incorporated by reference.

124.     Defendants Armstead and Bolding, and each of them, acted maliciously and with a willful and conscious disregard for the rights and safety of Plaintiff, a vulnerable and openly gay inmate, by placing and keeping him in a cell with an inmate with a history of assault against openly gay prisoners, who was incarcerated for sex crimes such as forced sodomy and forced oral copulation, and without any protection from the obvious and foreseeable risk that he would be assaulted.

125.     Defendants Armstead and Bolding, and each of them, acted oppressively and despicably by subjecting Plaintiff, a vulnerable and openly gay inmate, to cruel and unjust hardship in conscious disregard for his rights, by placing and keeping him in a cell with an inmate with a history of assault against openly gay prisoners, who was incarcerated for sex crimes such as forced sodomy and forced oral copulation, and without any protection from the obvious and foreseeable risk that he would be assaulted.

126.     Defendants Armstead and Bolding, and each of them, by keeping Plaintiff in a cell with an inmate with a history of assault against openly gay prisoners, who was incarcerated for sex crimes such as forced sodomy and forced oral copulation, and without any protection from

the obvious and foreseeable risk that he would be assaulted, even after Plaintiff informed them that he was "having real problems and needed to get out of" his cell, knew that Plaintiff would continue to be assaulted and/or raped by his cellmate.

127.    Defendants Armstead and Bolding, and each of them, are therefore liable to Plaintiff for punitive damages in an amount to be proven at trial.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for relief as follows:

1.    For a declaratory judgment that the acts and omissions of Defendants Armstead and Bolding, and each of them, violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution;

2.    For general and special damages against Defendants Neotti, Cota, Kabban-Miller, Pittman, Garcia, Cobb, Raupe, Armstead, and Bolding in an amount to be proven at trial;

3.    For punitive damages against Defendants Armstead and Bolding in an amount to be proven at trial;

4.    For costs of suit;

5.    For all other relief the court deems just and proper.

## JURY TRIAL DEMANDED

6.    Plaintiff hereby demands a trial by jury.


Dated: April 17, 2012                          MORRISON & FOERSTER LLP


                                      By:    /s/ M. Andrew Woodmansee
                                             M. ANDREW WOODMANSEE
                                             W. CHRISTOPHER DALTON

                                             Attorneys for Plaintiff
                                             MICHAEL J. BOOTH

Case No. 10 CV 1236 WQH (NLS)
SECOND AMENDED COMPLAINT

sd-578136

1

**CERTIFICATE OF SERVICE**

2

      I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
is 12531 High Bluff Drive, Suite 100, San Diego, California 92130.  I am not a party to the within

3

cause, and I am over the age of eighteen years.

4

      I further declare that on the date hereof, I served a copy of the following documents using
the CM / ECF system which will send notification of such filing to the parties denoted on the

5

Electronic Mail Notice List, and I placed a true copy thereof enclosed in a sealed envelope with
postage thereon fully prepaid, addressed to the non-CM/ECF participants indicated on the Manual

6

Notice List, for collection and mailing at Morrison & Foerster LLP, 12531 High Bluff Drive, Suite
100, San Diego, California 92130 in accordance with Morrison & Foerster LLP's ordinary business

7

practices.

8

**PLAINTIFF MICHAEL J. BOOTH'S SECOND AMENDED COMPLAINT**

9

      I declare under penalty of perjury that the foregoing is true and correct.

10

      Executed at San Diego, California, this 17th day of April, 2012.

11

                             MORRISON & FOERSTER LLP

12

13

                    By:  s/M. Andrew Woodmansee

14

                           M. ANDREW WOODMANSEE
                           MAWoodmansee@mofo.com

15

                           Attorneys for Plaintiff
                           MICHAEL J. BOOTH

16

17

18

19

20

21

22

23

24

25

26

27

28

1